STATE of Wisconsin, Plaintiff-Respondent,

v.

Robert L. DUCKETT, Defendant-Appellant.†

Court of Appeals

*No. 83–2113. Submitted on briefs August 15, 1984.—*
*Decided September 12, 1984.*

† Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Michael W. Tobin* of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, with *Marguerite M. Moeller,* assistant attorney general, of counsel, of Madison.

Before Wedemeyer, P.J., Moser and Sullivan, JJ.

SULLIVAN, J.   Robert L. Duckett (Duckett) appeals from an order of the trial court denying his post-conviction motion to vacate his sentence on the ground that it was imposed in violation of the double jeopardy clauses of the state and federal constitutions.  The dispositive issue is whether a mistrial, granted on motion of the prosecutor, was manifestly necessary.  We affirm.

Duckett was originally charged with first degree sexual assault, armed robbery and false imprisonment based on an April 22, 1982, complaint relating to an episode which had taken place the day before. The complaining witness, who had an ongoing relationship with Duckett, had also made a complaint against him on April 7, 1982; but the district attorney's office did not issue a charge against Duckett at that time.

On October 13, 1982, a jury was sworn in and instructed, and counsel made opening statements. Counsel for the defense referred in his opening statement to the complainant's having "accused [Duckett] of identically the same thing" on an earlier occasion. The prosecutor then requested a conference in chambers at which he expressed concern that the state's case was threatened by the defense's intent to use as evidence the fact that the state did not issue a charge upon the first complaint of its chief witness. The prosecutor believed that, in the face of such evidence, his chief witness' credibility would be destroyed. The only way he could conceive of rehabilitating it would be to take the witness stand himself to refute the inference that the district attorney's office found the complainant lacking in credibility the first time she complained. Counsel for the defense objected to the prosecutor's being allowed to testify.

The trial court explored an alternative to mistrial—namely, calling in another member of the district attorney's office to try the case. The prosecutor rejected this alternative, stating, "John DiMotto is the only one in our unit and he's starting a trial today and I won't put him in that position." The trial court, after hearing arguments from both sides, granted the state's motion for a mistrial, over the objection of defense counsel, on the ground of the "state's right to have a fair trial." A new trial was scheduled for January 18, 1983.

On that date, the state filed an amended information containing the original false imprisonment charge arising out of the alleged April 21, 1982, incident and charging a separate count of false imprisonment arising out of the alleged April 7, 1982, incident. There had never been a complaint issued or a preliminary hearing held on the latter false imprisonment charge. The state served this information on Duckett minutes before he was to enter his plea. He pled guilty to both counts and was sentenced to two years on each count to run concurrently, but consecutively to any other sentence being served.

Duckett's motion for post-conviction relief, pursuant to sec. 974.06, Stats., was heard and denied in September, 1983. This appeal followed.

Duckett contends that the potential prejudice to the state's case resulting from Duckett's challenge to the credibility of its chief witness did not constitute a manifest necessity for declaring a mistrial and that, therefore, his sentence on the first count of false imprisonment was in violation of the constitutional prohibitions against double jeopardy. Duckett contends that the violation of his constitutional rights also entitles him to withdraw his guilty plea on the second count. The state argues that the mistrial was properly declared and that Duckett waived his double jeopardy claim by pleading guilty in return for a favorable plea bargain.

■

Jeopardy attaches upon the swearing of the jury. Sec. 972.07 (2), Stats. Under the federal and state constitutions a defendant may not be twice put in jeopardy for the same offense. U.S. Const. amend. V; Wis. Const. art. I, sec. 8; *Benton v. Maryland,* 395 U.S. 784, 787 (1969). The double jeopardy prohibition, however, does not mean that every time a defendant is put to trial before a competent tribunal he or she is entitled to go free if the trial fails to culminate in a judgment. *Wade v. Hunter,* 336

U.S. 684, 688 (1949). The right to have a trial continued to judgment must sometimes be "subordinated to the public's interest in fair trials designed to end in just judgments." *Id.* at 689. Therefore, " 'the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated.' " *United States v. Jorn,* 400 U.S. 470, 481 (1971) (quoting *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580 (1824)).

The decision to declare a mistrial is within the "sound discretion" of the trial court. *Arizona v. Washington,* 434 U.S. 497, 514 (1978). A trial judge must have the power to declare a mistrial in an appropriate case without being unduly deterred by the concern that any time a reviewing court disagrees with his or her assessment of the trial situation, retrial would be automatically barred. *See id.* at 513. "[O]n review the test is whether, under all the facts and circumstances, giving deference to the trial court's first-hand knowledge, it was reasonable to grant a mistrial under the 'manifest necessity' rule." *State v. Copening,* 100 Wis. 2d 700, 710, 303 N.W.2d 821, 826–27 (1981). Trial courts considering a mistrial declaration *sua sponte* or on the motion of the prosecutor should consider other alternatives before depriving a defendant of the valued right to be tried by the original tribunal. *Id.* at 711, 303 N.W.2d at 827. The amount of deference to be accorded to a trial court's mistrial declaration varies with the reason necessitating the mistrial. *Arizona,* 434 U.S. at 507–10. Where the mistrial was based on the unavailability of prosecution evidence, strict scrutiny is appropriate. *Id.* at 508.

Duckett characterizes the mistrial in this case as having been prompted by a deficiency in the state's evidence;

he argues that the mistrial declaration must therefore be strictly scrutinized. We take a different view. The prosecutor requested a mistrial when, after defense counsel's opening statement, it became evident to the prosecutor that he would have to take the stand to refute the impression that a previous complaint by the complainant had not resulted in a criminal charge because her veracity was doubtful. The defendant objected to the prosecutor's acting as both advocate and witness. Thus, the problematic evidence in this case was not unavailable; rather, its use was not agreeable to the defense. Accordingly, we decline to strictly scrutinize the trial court's mistrial declaration.

■

The circumstances of this case make the court's mistrial declaration reasonable. Defense counsel raised a question in the juror's minds as to the credibility of the complaining witness. Rebutting that damaging impression would have required the assistant district attorney to testify. The assistant district attorney, Duckett's counsel, and the trial court all recognized the ethical dilemma involved in assuming the dual roles of advocate and witness. The trial court considered the alternative of bringing in another prosecutor but was told by the assistant district attorney that no substitute prosecutor was then available.

■

The trial court did not act irrationally or precipitately. *See Arizona,* 434 U.S. at 514–15. The record reflects that the court made a reasoned and deliberate analysis of the circumstances necessitating the termination of trial.

THE COURT: Well, not to allow the district attorney to take the stand and testify would be a denial by the court, the state has to clarify such a statement. I placed on this record already the court's belief that the jury

may not understand the discretion of the—discretionary power in the hands of the district attorney. So now, if the defense objects to a mistrial and if the defense objects to the state's attorney proceeding as a prosecutor and then wearing a different hat, being a witness before the same jury, that leaves the court in a position but to rule that the state too is entitled to a fair trial.

. . . .

It is not a matter of discovery, not even a matter of being caught by surprise. It is a matter that each side is entitled to a fair trial. It is a matter that this is a search for the truth, as I have so demonstrated to the jury in various statements and certainly the defense has a right to object to the prosecutor serving also as a witness, feeling that such might be too great a burden to overcome, and of course the defense has a right to object to the request for a mistrial and a right not to join in, but the court has a duty and responsibility that overrides each of those, that each side shall have a fair trial and I cannot see how the state can have a fair trial in this instance without at least having this matter put before the jury for clarification, particularly when such great emphasis was put to the jury.

As in *Arizona,* 434 U.S. at 516, the court in the instant case "accorded careful consideration to [the defendant's] interest in having the trial concluded in a single proceeding[:]"

THE COURT: The court recognizes that the defendant has a right to have his case disposed of by the first tribunal who has heard the proceedings or part of the proceedings. This is the most difficult matter before the court at this time.

Duckett points out that the trial court did not, on the record, consider the feasibility of a continuance or curative instructions. We will resist the temptation to engage in an overly formalistic review. We rely on the Supreme Court's approach in *Arizona:*

We recognize . . . that the District Court was quite correct in believing that some trial judges might have

proceeded with the trial after giving the jury appropriate cautionary instructions. In a strict, literal sense, the mistrial was not "necessary." Nevertheless, the overriding interest in the evenhanded administration of justice requires that we accord the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected by the improper comment.

*Id.* at 511. Furthermore, this is not a case in which the trial had proceeded to an advanced stage and was going well for the defendant. Only the opening arguments had been completed. The court, in granting the mistrial, stated it would "now set the matter down for a trial at the earliest possible date, even if we must cancel some other case." We are satisfied that the trial court's failure to grant a continuance was not an abuse of discretion.

In summary, we are satisfied that the trial court exercised sound discretion in declaring a mistrial upon motion of the state. Therefore, no violation of his constitutional rights renders Duckett's sentences invalid. Because we have elected to reach the merits of Duckett's double jeopardy claim, we do not address the state's contention that Duckett waived that claim by failing to affirmatively plead it until after sentencing and by entering counseled pleas of guilty pursuant to a favorable plea bargain.

*By the Court.*—Order affirmed.