MICHAEL J. GABLEMAN, J.
¶ 1. We are asked to determine whether a defendant must be physically present when a judge holds an in-chambers discussion with a juror during the middle of a trial. We recognize that a defendant has a constitutional right to be present at his trial. Kentucky v. Stincer, 482 U.S. 730, 745 (1987). Whether this right to be present at trial encompasses in-chambers meetings "admits of no categorical 'yes' or 'no' answer. A conference in chambers might well constitute part of the trial depending upon what matters are discussed or passed upon. Likewise, such a conference might not be a part of the trial in the sense of one's constitutional right to be present." Ramer v. State, 40 Wis. 2d 79, 84,161 N.W.2d 209 (1968) (citation omitted). The test for whether a defendant's presence is required at an in-chambers hearing, or at a conference in the courtroom after the judge has emptied it of *331 spectators, is whether his absence would deny him a fair and just hearing. Id. at 85.
¶ 2. The defendant, Demone Alexander, was charged with first-degree intentional homicide and his case was tried to a jury.[1] During the trial, two jurors at separate times approached the bailiff to discuss a potential bias issue. One juror stated that she knew a woman in the courtroom gallery, who turned out to be the mother of Alexander's child, and another said that he knew one of the defense's witnesses. To resolve the matter, the judge held separate in-chambers discussions with both jurors to determine the extent of the bias. Both of Alexander's attorneys and the prosecutor were present for these meetings, but Alexander was not. The court ultimately struck the jurors, over defense counsel's objections.
¶ 3. Alexander was convicted and sought postconviction relief, arguing that he had a constitutional and statutory right to be present during the in-chambers discussions. He argued the constitutional right is grounded in the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 7 of the Wisconsin Constitution. The statutory right, he alleged, stemmed from Wis. Stat. § 971.04(l)(c),[2] which provides that "the defendant shall be present. . . [d]uring voir dire of the trial jury." The circuit court denied the motion and the court of appeals affirmed.
¶ 4. We hold that the circuit court's decision to exclude Alexander from the in-chambers meetings with the jurors did not deprive Alexander of a fair and just hearing. As the United States Supreme Court has *332 outlined, the factors a trial court should consider in determining whether a defendant's presence is required to ensure a fair and just hearing include whether the defendant could meaningfully participate, whether he would gain anything by attending, and whether the presence of the defendant would be counterproductive. United States v. Gagnon, 470 U.S. 522, 527 (1985) (per curiam). Alexander would not have been able to contribute anything to the circuit court's inquiry of the jurors, and may in fact have intimidated them if he had been present. Additionally, both of Alexander's attorneys were present at the in-chambers meetings. Alexander's absence thus did not violate his constitutional right to be present at his trial.
¶ 5. We also hold that Alexander's statutory right under Wis. Stat. § 971.04(l)(c) to be present during voir dire was not violated. Voir dire is a preliminary examination of whether an individual can serve on a jury. In this case, the trial had already commenced and the jurors had already been selected when the bias issue arose. Section 971.04(l)(c) is thus inapplicable here. The decision of the court of appeals is affirmed.
I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY
¶ 6. Demone Alexander was charged with first-degree intentional homicide in the shooting death of Kelvin Griffin. The facts surrounding the shooting are not at issue in this case. Instead, the questions presented center around the trial judge's separate in-chambers discussions with members of the jury, which took place outside Alexander's presence. Accordingly, we recite only the facts relating to those discussions.
¶ 7. Near the end of Alexander's seven-day trial, Juror 10 approached the bailiff and informed him that *333 she knew a woman who was seated in the gallery. The trial judge then held an on-the-record meeting in his chambers with the juror. The prosecutor and both of Alexander's attorneys were present as well. At the outset of the gathering, the circuit court asked Alexander's counsel if she would be willing to "waive the appearance of Mr. Alexander for purposes of this?" The attorney replied, "We do."[3]
¶ 8. The court proceeded to ask the juror how she knew the woman in the gallery. Juror 10 identified the woman as "Monique," and said that "[s]he's an old friend of the family. We grew up together." As Juror 10 further elaborated, Monique "went to school with my sister .... [Sjhe's really my sister's friend." However, due to a falling out between Monique and Juror 10's sister, Juror 10 had not seen Monique in six months. Finally, Juror 10 stated that she did not know what Monique's connection to the case was.
¶ 9. After Juror 10 left chambers, the court was informed that Monique had a child with Alexander. Counsel for Alexander argued that this fact was not a problem, as Juror 10 "doesn't have any idea why Monique is even here. So if she doesn't know anything about it, there's no relationship and no prejudice and no bias and no nothing." The prosecutor, though, argued that it would be "dangerous to keep her on the jury" because she might discover the connection between Monique and Alexander. The court then ordered Alexander's attorneys to talk to their client about his relationship with Monique and his knowledge of Juror 10's connection with Monique. After an off-the-record discussion with their client, counsel for Alexander *334 confirmed that Monique "is, in fact, his baby's momma. But he has not seen her in sixteen months. He's not close to her. [And he] does not know the juror. He's never seen her before."
¶ 10. The court put off the decision on whether to remove Juror 10 and proceeded to address another potential juror bias issue that arose that day. The defense had just called a witness named Jesse Sawyer to dispute the statement of one of the State's witnesses who testified that Alexander gave the murder weapon to Sawyer to hide. After Sawyer finished his testimony that day, Juror 33 told the bailiff that he knew Sawyer. The circuit court, repeating the process it used earlier, invited the attorneys and Juror 33 into chambers to inquire on the record as to the juror's relationship with the witness. Upon inquiry from the court, Juror 33 described his relationship with Sawyer as one based on a mutual interest in Harley-Davidson motorcycles. Sawyer does custom work on the motorcycles, Juror 33 continued, and Juror 33 would "go by his house because I'm interested in how he does the bikes because I want to purchase me a Harley-Davidson. I wanted him to do some work on my bike." Juror 33 further stated that he had known Sawyer for three years, and had seen him recently at a party and at a Harley-Davidson event. Juror 33 did not, however, consider Sawyer a personal friend, but rather an acquaintance he would go to if he needed work done on his motorcycle.
¶ 11. Following Juror 33's departure from chambers, the judge asked each side to state a position on whether he needed to be removed. Defense counsel argued against removal, while the prosecutor equivocated: "I'm uncomfortable with any juror knowing a witness .... [B]ut I'm not asking that he be struck at this time, and I reserve. If we make it to the end with 14 *335 [jurors], I don't know what I would do at that point."[4] The court then decided it would wait until the conclusion of Alexander's trial to determine whether it had to remove either juror.
¶ 12. After a weekend break, the trial resumed for closing arguments. That morning, however, Juror 10 called another juror to report that she would not be able to make it to court that day because her boyfriend had been in a car accident. Juror 10 subsequently arrived, and the judge decided to conduct another in-chambers discussion with her to ask her about the car accident and to further inquire into any potential bias resulting from her relationship with Monique. Once again the lawyers — but not Alexander — were present.
¶ 13. When asked by the court whether she could be impartial in light of her relationship with Monique, Juror 10 replied, "I definitely can .... I don't talk to her at all. It doesn't bother me. I'll be able to go ahead and directly have my own decision." The prosecutor asked her why she reported her relationship with Monique to the bailiff and Juror 10 replied, "I felt it was very important because I didn't know if she was going to try to retaliate and try to contact me and ask me about some things [about the case] or not." And in response to further questions from the prosecutor, Juror 10 said she thought Monique was somehow connected to Alexander's murder trial.
¶ 14. The circuit court, pointing to Juror 10's concern that Monique might "retaliate" against her, struck her from the jury. Defense counsel noted her objection on the record, and the discussion moved to *336 Juror 33. The State requested removal and Alexander's attorney objected, stating that "I don't think there's any basis on this record for him to be struck for cause." The court sided with the prosecution and removed Juror 33 for cause based on his relationship with the defense's witness.
¶ 15. Alexander was found guilty of first-degree intentional homicide and possession of a firearm by a felon. He subsequently filed a motion for postconviction relief, arguing that he had a constitutional and statutory right to be present when the court questioned Jurors 10 and 33.[5] According to the motion, the circuit court's in-chambers discussions with the jurors violated his due-process rights and his right to a fair and impartial jury. See U.S. Const, amends. VI, and XIV § 1; Wis. Const, art. I, § 7. As for the statutory violation, Alexander pointed to Wis. Stat. § 971.04(l)(c), which provides that "the defendant shall be present... [djuring voir dire of the trial jury." The circuit court denied the motion, reasoning that because the in-chambers conversations were not part of the jury-selection process, Alexander's constitutional and statutory rights were not violated.
¶ 16. Alexander appealed and the court of appeals affirmed in an unpublished opinion. State v. Alexander, No. 2011AP394-CR, unpublished slip. op. (Wis. Ct. App. May 8, 2012). The court of appeals concluded that because the in-chambers meetings with the jurors occurred after voir dire, they were permissible, for Alexander's attorney "was entitled to make the strategic decision to waive Alexander's presence at the in-chambers meetings with the jurors." Id., ¶ 17 (citation omitted).
*337 ¶ 17. We granted Alexander's petition for review and now affirm his conviction, although on different grounds than the court of appeals.
II. STANDARD OF REVIEW
¶ 18. This case requires us to determine whether Alexander had a constitutional or statutory right to be present during the court's in-chambers discussions with the two jurors. The interpretation and application of constitutional and statutory provisions are questions of law that we review de novo. State v. Hamdan, 2003 WI 113, ¶ 19, 264 Wis. 2d 433, 665 N.W.2d 785.
III. DISCUSSION
¶ 19. We conclude that on the facts of this case, Alexander was not denied a fair and just hearing by virtue of his absence from the circuit court's separate in-chambers discussions with two jurors. Moreover, we hold that Alexander did not have a statutory right to attend the discussions under Wis. Stat. § 971.04(l)(c) because removal of the jurors did not occur during voir dire.
A. Alexander's Absence From the In-Chambers Hearings Did Not Violate His Constitutional Right to be Present at Trial
1. Applicable Constitutional Provisions
¶ 20. Both the United States and Wisconsin Constitutions contain a right to due process. The Fourteenth Amendment to the United States Constitution prevents a state from depriving "any person of life, *338 liberty, or property, without due process of law," while Article I, Section 8 of the Wisconsin Constitution reads: "No person may be held to answer for a criminal offense without due process of law. . . ." Due process guarantees a defendant "the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure."[6] Stincer, 482 U.S. at 745.
¶ 21. A criminal defendant's right to an impartial jury, on the other hand, flows from the Sixth Amendment to the U.S. Constitution and Article I, Section 7 of the Wisconsin Constitution. State v. Mendoza, 227 Wis. 2d 838, 847, 596 N.W.2d 736 (1999). The Sixth Amendment, in relevant part, states: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ." Similarly, Article I, Section 7 of the Wisconsin Constitution provides: "In all criminal prosecutions the accused shall enjoy the right... in prosecutions by indictment, or information, to a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed. . .." When "the language of [a] provision in the state constitution is virtually identical to that of the federal provision or where no difference in intent is discernible, Wisconsin *339 courts have normally construed the state constitution consistent with the United States Supreme Court’s construction of the federal constitution." State v. Agnello, 226 Wis. 2d 164, 180, 593 N.W.2d 427 (1999) (internal quotation marks and citations omitted); see also State v. Schaefer, 2008 WI 25, ¶ 62, 308 Wis. 2d 279, 746 N.W.2d 457 (determining that the compulsory-process clauses in the Sixth Amendment and Article I, Section 7 of the Wisconsin Constitution are cognate provisions). Wisconsin courts may also look for guidance from lower federal courts in interpreting cognate constitutional provisions.[7] See Rao v. WMA Secs., Inc., 2008 WI 73, ¶¶ 47-50, 310 Wis. 2d 623, 752 N.W.2d 220.
2. Alexander's Right to be Present at Trial Was Not Violated
¶ 22. An accused has a constitutional right "to be present during his trial, and his right to be present at the trial includes the right to be present at proceedings before trial at which important steps in a criminal prosecution are often taken." Leroux v. State, 58 Wis. 2d 671, 689, 207 N.W.2d 589 (1973) (emphasis added) (citation omitted). As for conferences during the trial, we have "recommended" that these "rarely" be held without the defendant present. Id. at 690 (internal quotation *340 marks and citation omitted). "However, the presence of [a] defendant is constitutionally required only to the extent a fair and just hearing would be thwarted by his absence.... The constitution does not assure 'the privilege of presence when presence would be useless, or the benefit but a shadow.'" Id. (quoting Snyder v. Massachusetts, 291 U.S. 97, 106-07 (1934)), overruled on other grounds by Malloy v. Hogan, 378 U.S. 1 (1964). Furthermore, "whether the defendant has a right to attend a conference in chambers ... admits of no categorical 'yes' or 'no' answer. A conference in chambers might well constitute part of the trial depending upon what matters are discussed or passed upon. Likewise, such a conference might not be part of the trial in the sense of one's constitutional right to be present." Ramer, 40 Wis. 2d at 84.
¶ 23. We acknowledge that some of the language in our case law has been in tension with the concept that a defendant does not have an absolute constitutional right to attend every in-chambers conference. For example, in State v. Burton, 112 Wis. 2d 560, 563, 334 N.W.2d 263 (1983), the circuit court communicated twice with the jury — outside the presence of either the prosecutor or defense counsel — during deliberations. Id. The discussions concerned the process for turning over the sealed verdict to the court as well as scheduling dinner and hotel arrangements in the event the jury could not reach a verdict by the end of the day. Id. at 563-64. We held that "communication between a judge and a jury, while the jury is deliberating, outside the courtroom and outside the presence of the defendant and defense counsel constitutes constitutional error, if the defendant has not waived the constitutional right to be present." Id. at 570.
*341 ¶ 24. This holding, however, was in direct contradiction to our decision just three years earlier in May v. State, 97 Wis. 2d 175, 293 N.W.2d 478 (1980). In that case, during deliberations the jury asked the circuit court the following question related to the charged offense of delivering a controlled substance as a party to a crime: " 'By withdrawing from a conspiracy has a person removed themselves (sic) from aiding and abetting the commission of a crime?'" Id. at 180 (quoting the jury note) ("sic" in original). The court answered the question "no," without informing the defendant or his attorney. Id. Two issues related to this incident were raised on appeal: (1) did the circuit court err in answering the question in the absence of counsel?; and (2) did the circuit court err in answering the question in the absence of the defendant? Id. As to the first question, we held that because "there was no waiver in this case, counsel should have been given the opportunity to confer with the court about the appropriate response to be given to the jury's question. It was error for the trial court to answer the question without notifying counsel." Id. at 183-84. On the second question, however, we held that, "[a] fair and just trial was not thwarted by the court's answering that question outside the defendant's presence. The question posed by the jury dealt with a question of law and the trial court answered it correctly." Id. at 186. Additionally, "[njothing transpired which was prejudicial or harmful to the defendant's cause, especially in view of the fact that the trial court subsequently reread to the jury the instructions concerning party to a crime." Id. All that due process and Wis. Stat. § 971.04 required was that the defendant's attorney be present. Id. at 185-88.
¶ 25. As Burton and May are in conflict, we must overrule one of them. We now hold that May is more *342 soundly reasoned and more consistent with the precedent of this court and that of the U.S. Supreme Court. As we have stated, "the presence of [a] defendant is constitutionally required only to the extent a fair and just hearing would be thwarted by his absence .... The constitution does not assure 'the privilege of presence when presence would be useless, or the benefit but a shadow.'" Leroux, 58 Wis. 2d at 690 (quoting Snyder, 291 U.S. at 106-07). Adopting a requirement that a defendant must always be present whenever a court speaks with members of the jury would render the above-quoted language from Leroux meaningless. More importantly, it would impose an unreasonable and unnecessary burden upon trial judges, who would be forced to ensure the presence of defendants at meetings where they had nothing to contribute to their own cause, and where their presence could in fact be highly counterproductive. The Constitution does not require criminal proceedings to be undermined so significantly in this way, and for so little benefit to the defendant. That is why our better-reasoned case law provides that whether a defendant must be present when a court meets with members of the jury "admits of no categorical 'yes' or 'no' answer." Ramer, 40 Wis. 2d at 84. All that is required when the court communicates with members of the jury is that the defendant's attorney be present. See May, 97 Wis. 2d at 183-84.
¶ 26. Our carelessness in Burton also led this court astray in State v. Anderson, 2006 WI 77, 291 Wis. 2d 673, 717 N.W.2d 74, a case Alexander relies on heavily. In that case, the issue once again was the propriety of "the circuit court's ex parte communications with the jury during deliberations outside the presence of the defendant and without notice to or consultation with the defendant." Id., ¶ 23. We began *343 our analysis on this issue by quoting the U.S. Supreme Court edict that "[o]ne of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial." Id., ¶ 39 (quoting Illinois v. Allen, 397 U.S. 337, 338 (1970) (alteration in original)). The Confrontation Clause, however, does not apply when the defendant is not confronting witnesses or evidence against him. United States v. McCoy, 8 F.3d 495, 496 (7th Cir. 1993). As Anderson centered on the defendant's right to be present when the trial court spoke with the jury during deliberations, its reliance upon a Confrontation Clause case was incorrect.
¶ 27. We then moved to a discussion of Burton and Williams v. State, 40 Wis. 2d 154, 161 N.W.2d 218 (1968), and concluded that "an accused has a right to be present whenever any substantive step is taken in the case." Anderson, 291 Wis. 2d 673, ¶ 42 (emphasis added). This court never defined "substantive step," but nonetheless concluded — ipse dixit — that "[a] substantive step in a trial for which an accused has a right to be present includes the circuit court's communications with the jury during deliberations." Id., ¶ 43 (footnote omitted). For support of this statement we cited to Burton and a slew of court of appeals cases relying on that decision. Anderson, 291 Wis. 2d 673, ¶ 43 n.20. At the end of that string cite, though, we tacitly acknowledged but did not confront the fact that May and Burton conflicted. Anderson, 291 Wis. 2d 673, ¶ 43 n.20.
¶ 28. What is more, Anderson never cited to Leroux, nor Ramer, which made clear that a defendant has a due-process right to be present at an in-chambers meeting only if his absence would deny him a "fair and just hearing." See Leroux, 58 Wis. 2d at 690; Ramer, 40 Wis. 2d at 85. With a sleight of its hand, Anderson *344 changed what should have been a fact-specific due-process inquiry (did the communication between the judge and jury deny the defendant a fair and just hearing?) into an absolute Confrontation Clause right to be present whenever the trial court speaks with members of the jury. We thus withdraw all language from Anderson intimating such a right. See 291 Wis. 2d 673, ¶¶ 35-44.
¶ 29. Federal case law also supports our conclusion that Burton and Anderson are outliers. The U.S. Supreme Court has said that the "mere occurrence of an ex parte conversation between a trial judge and a juror does not constitute a deprivation of any constitutional right. The defense has no constitutional right to be present at every interaction between a judge and juror, nor is there a constitutional right to have a court reporter transcribe every such communication." Gagnon, 470 U.S. at 526 (internal quotation marks and citation omitted). And in a case where the defendants were excluded from a conference concerning whether to dismiss a group of jurors, the United States Court of Appeals for the Third Circuit put it persuasively and succinctly: "It is clear that there is no constitutional right for a defendant to be present at a conference in chambers concerning dismissal of a juror." United States v. Provenzano, 620 F.2d 985, 997-98 (3d Cir. 1980); see also McCoy, 8 F.3d at 497. All that the Constitution requires at such a conference is the presence of defense counsel. See Ellis v. Oklahoma, 430 F.2d 1352, 1355 (10th Cir. 1970).
3. Alexander Received a Fair and Just Hearing
¶ 30. While Alexander had no automatic constitutional right to be present during the circuit court's *345 in-chambers discussions with Jurors 10 and 33, his presence was required "to the extent a fair and just hearing would be thwarted by his absence." Leroux, 58 Wis. 2d at 690 (citation omitted). Factors a trial court may consider in determining whether a defendant's presence is required at an in-chambers conference with a juror to ensure a "fair and just hearing" include whether the defendant could meaningfully participate, whether he would gain anything by attending, and whether the presence of the defendant would be counterproductive.[8] See Gagnon, 470 U.S. at 527. In a situation such as the present case, where a judge is conducting an in-chambers meeting to determine whether a juror is biased based on an account of the juror's connection to the case, the presence of the defendant would in no way help to resolve the issue and may actually hinder the proceeding. There was presumably nothing Alexander could have contributed on either the subject of Juror 10's relationship with Monique or Juror 33's association with Sawyer, as Alexander has never alleged that he was aware of these connections. In fact, both jurors may very well have been intimidated and deterred from speaking forthrightly about their potential bias with Alexander seated only a few feet away. Cf. United States v. Bertoli, 40 F.3d 1384, 1397 (3d Cir. 1994) ("[W]e doubt whether the jurors would have been as comfortable discussing their conduct [in chambers] had [the defendant] been present.") (footnote omitted). This concern is particularly acute in Juror 10's case, as she was explicitly afraid of "retaliation" from a woman who turned out to be the mother of Alexander's child. Additionally, Alexander's attorneys were permitted to leave chambers to speak with him *346 whenever they needed his input. Alexander was thus not denied a "fair and just hearing" by virtue of his absence from the judge's chambers.[9]
B. Wis. Stat. § 971.04(l)(c) Does Not Apply
¶ 31. Alexander also asserts that he had a right to be present at the in-chambers meetings based on Wis. Stat. § 971.04(l)(c), which mandates that a defendant "be present. . . [djuring voir dire of the trial jury." "Voir dire" is not defined in the statute, but Black's Law Dictionary defines it as "[a] preliminary examination of a prospective juror by a judge or lawyer to decide whether the prospect is qualified and suitable to serve on a jury." 1710 (9th ed. 2009) (emphasis added). Other sources define it similarly. See James H. Gold, Voir Dire: Questioning Prospective Jurors on Their Willingness to Follow the Law, 60 Ind. L.J. 163, 163 (1985) ("During the pre-trial jury selection process known as voir dire, criminal defendants often seek to question prospective jurors as to their willingness and ability to follow specific rules of law.") (footnote omitted); Robert E. Larsen, Navigating the Federal Trial, § 4:1 (2012 ed.) ("Voir dire is a preliminary examination of potential *347 jurors by a judge or lawyer to determine whether the prospect is qualified and suitable to serve on a jury."). Here, the examination of Jurors 10 and 33 occurred during the trial and after both had been selected as jurors. The in-chambers hearings were thus not part of voir dire. The court of appeals cases relied on by Alexander supporting the proposition that a defendant has a right to be present during in-chambers voir dire are as a result inapposite. See State v. David J.K., 190 Wis. 2d 726, 735-36, 528 N.W.2d 434 (Ct. App. 1994) (holding that the defendant had a constitutional and statutory right to be present when the circuit court privately questioned three jurors in chambers during the middle of voir dire); see also State v. Tulley, 2001 WI App 236, ¶¶ 6, 10, 248 Wis. 2d 505, 635 N.W.2d 807 (reaffirming David J.N.).[10]
*348 IV CONCLUSION
¶ 32. We hold that the circuit court's decision to exclude Alexander from the in-chambers meetings with the jurors did not deprive Alexander of a fair and just hearing. Alexander would not have been able to contribute anything to the circuit court's inquiry of the jurors, and may in fact have intimidated them if he had been present. Additionally, both of Alexander's attorneys were present at the in-chambers meetings. Alexander's absence thus did not violate his constitutional right to be present at his trial.
¶ 33. We also hold that Alexander's statutory right under Wis. Stat. § 971.04(l)(c) to be present during voir dire was not violated. Voir dire is a preliminary examination of whether an individual can serve on a jury. In this case, the trial had already commenced and the jurors had already been selected when the bias issue arose. Section 971.04(l)(c) is thus inapplicable here.
By the Court. — The decision of the court of appeals is affirmed.

 The Honorable Carl Ashley presiding.

 All subsequent references to the Wisconsin Statutes are to the 2011-12 version.

 Alexander had two attorneys representing him at his trial. To avoid unnecessary confusion and for the sake of brevity, we will refer to them as "counsel" where appropriate.

 Fourteen jurors were selected so that two could be designated as alternates. If at the end of the trial all 14 jurors still remained, the circuit court planned to randomly pick two to be removed before deliberations.

 Alexander raised other issues which are not germane to this appeal.

 A defendant's right to be present at his trial is also rooted in the Sixth Amendment's Confrontation Clause. United States v. Gagnon, 470 U.S. 522, 526 (1985) (per curiam). But in a situation (such as the one at issue in this case) where the defendant is not confronting witnesses or evidence against him, the right is located in the Due Process Clause of the Fourteenth Amendment. Kentucky v. Stincer, 482 U.S. 730, 745 (1987); United States v. McCoy, 8 F.3d 495, 496 (7th Cir. 1993).

 "Cognate provision" refers to the parts of a state constitution that are modeled on the federal Bill of Rights. Stanley E. Adelman, Towards an Independent State Constitutional Jurisprudence or How to Disagree with the Supreme Court and How Not To, 2002 Ark. L. Notes 1, 1 ("State constitutions typically contain 'cognate' provisions which are based on and worded similarly, if not identically, to the various guarantees of liberty contained in the Bill of Rights of the United States Constitution.") (footnote omitted).

 This list is not exhaustive, as future cases will present circuit courts with facts that cannot be anticipated.

 Rather than grappling with any of the factors articulated by the Supreme Court in United States v. Gagnon, 470 U.S. 522, 527 (1985) (per curiam) to determine whether Alexander was denied a fair and just hearing, Justice Crooks nakedly asserts that "Alexander's presence at these conferences was critical to the fairness of the proceedings." Justice Crooks's concurrence, ¶ 71. Justice Crooks does not answer what Alexander could have contributed to the in-chambers conferences, nor does he address the threat that would have been posed to the jurors' candor had they been forced to discuss their potential bias issues with an accused murderer seated a few feet away. See Gagnon, 470 U.S. at 527.

 Wisconsin Stat. § 971.04(l)(b) protects a defendant's right to be present "[a]t trial." Justice Crooks contends that Alexander had a right to attend the in-chambers discussions pursuant to that provision. Justice Crooks's concurrence, ¶ 58. However, Alexander did not make that argument before this court. We therefore do not address the question. See State v. Johnson, 153 Wis. 2d 121, 124, 449 N.W.2d 845 (1990) ("This court will not consider the issues respondent wishes to have considered unless they are asserted in the brief and fully discussed in that brief to this court.").
Nonetheless, Justice Crooks considers the issue sufficiently pled because Alexander's brief here cites to State v. Anderson, 2006 WI 77, 291 Wis. 2d 673, 717 N.W.2d 74, and 'Anderson considers both a defendant's statutory and constitutional right to be present 'at trial.'" Justice Crooks's concurrence, ¶ 47. True enough. But Anderson also considered "whether the circuit court committed error by failing to make a record of or preserve a record of its statements or comments to the jury relating to the case" under Wis. Stat. § 805.13, 291 Wis. 2d 673, ¶¶ 77-78, and "whether the circuit court erred by refusing the jury's requests to have the defendant's and the victim's in-court testimony read to it while allowing the jury during deliberations *348 to see and hear the victim's videotaped interview." Id., ¶ 82. Alexander cited 21 other cases in the same brief, each of which presented separate issues. It would be aberrant indeed to consider an issue raised because a case cited in a litigant's brief mentioned the particular issue. Appellate courts have higher pleading standards than this. See United States v. Zannino, 895 F.2d 1,17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."); Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988) ("Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly ..., or else forever hold its peace.") (internal quotation marks and citation omitted).