PER CURIAM.
¶ 1 The trial court granted the State's motion for a mistrial at Antwon D. Flint's first jury trial after the jury was sworn. At his second trial, the jury convicted him of armed robbery, use of force, as a party to a crime (PTAC). As he did in his unsuccessful motion for postconviction relief, Flint contends the court erred in (1) ordering the mistrial because it placed him in double jeopardy, and (2) allowing the deliberating jury to watch a video of the robbery without court supervision.[1] We review his claims through the lens of ineffective assistance of counsel. As Flint has not shown that he was prejudiced by his counsel's actions, we affirm the judgment and order.
¶ 2 Four men robbed a Pleasant Prairie liquor store after subduing the clerk with pepper spray. A surveillance video captured the event. One robber's face was partially covered with a bandana, one gave orders to the other three, and one brandished a handgun. The fourth was not clearly visible. A similar three-man robbery occurred just hours later in Antioch, Illinois. A comparison of the liquor store video to photographs Antioch police supplied identified Paris Williams, Kenneth Cooper, and Cortez Holliman as players in both robberies.
¶ 3 Cooper told Pleasant Prairie police that he, Williams, Holliman, and Flint robbed the liquor store. Cooper said he was the gunman, Williams used the pepper spray, Holliman wore the bandana, and Flint was the fourth robber. Flint denied his involvement to police, expressing bewilderment why Cooper, a friend since childhood, would falsely frame him. Still, police charged him, Cooper, and Holliman with PTAC armed robbery by use of force.[2] Flint opted for a jury trial.
¶ 4 In her opening statement, Flint's counsel told the jury that: of the four robbers, only Cooper, Holliman, and Williams were easily identifiable on the liquor store surveillance tape; when questioned by police, Cooper initially said he did not know the identity of the fourth robber but when shown pictures from the tape, said, "Is that Antwon Flint?"; the officer then asked, "So Antwon participated?" and Cooper answered, "No"; but the police report nonetheless omitted his "no" answer and stated that he identified Flint as the fourth robber.
¶ 5 Defense counsel continued: "Now, two months after the robbery the police find my client and interview him. My client, thinking that he's being cooperative, talks to them, says, yes, I know Kenneth Cooper; he and I have been childhood friends." The State objected that Flint's out-of-court statements to police were inadmissible hearsay and moved for a mistrial. The prosecutor argued that the State could introduce Flint's out-of-court statements as admissions by a party opponent, see WIS. STAT. § 908.01(4)(b) (2015-16),[3] but, even if he testified, Flint could not introduce his own hearsay statements. The prosecutor contended counsel improperly "attempt[ed] to indicate that he was cooperative and that he was acknowledging things that would be helpful to his defense." Flint opposed the mistrial. The court granted the State's motion.
¶ 6 Flint did not move to dismiss the second trial on double jeopardy grounds. At the trial's outset, the court on its own addressed the propriety of the mistrial to ensure that the trial could go forward. Both sides summarized their earlier arguments, and the court procured and reviewed a copy of the transcript of the prior court's ruling. It concluded that granting a mistrial was appropriate.
¶ 7 The trial proceeded. During jury deliberations, the jury asked to see, among other exhibits, the surveillance-camera video from the liquor store robbery the State played during trial. Defense counsel asserted that, under current case law, the jury could watch the video only with court supervision. See Franklin v. State , 74 Wis. 2d 717, 247 N.W.2d 721 (1976), and State v. Anderson , 2006 WI 77, 291 Wis. 2d 673, 717 N.W.2d 74, abrogated in part on other grounds , State v. Alexander , 2013 WI 70, ¶¶ 26-28, 349 Wis. 2d 327, 833 N.W.2d 126. The court agreed, albeit with strong disapproval of the Franklin court's "archaic" holding. The jury then was discharged for the day.
¶ 8 The next morning, the court said it "had a change of heart," because, on review of Franklin and Anderson , it deemed them distinguishable from Flint's case: the recordings in those cases were of out-of-court statements, while Flint's was a video of the crime in progress. The court questioned how the jury possibly could overemphasize such a recording and ruled that it would be fair to both parties to allow the jury to view the robbery video unsupervised, so they could pause it, re-view it as many times as necessary, and discuss it amongst themselves.
¶ 9 Defense counsel "object[ed] without argument," stating that her sole concern was that the jury might use a computer to access other files. Assured that the jury would not be allowed to do so, counsel confirmed she had no other issue with the court's ruling. The court allowed the jury to watch the robbery video without judicial supervision. The jury found Flint guilty.
¶ 10 Postconviction, Flint argued that the mistrial was improperly granted, such that his conviction should be vacated on double jeopardy grounds and the charges dismissed with prejudice. Alternatively, he argued that he merited a new trial because the deliberating jury was improperly allowed to watch the robbery video without court supervision. Finally, he argued that trial counsel was ineffective because she failed to adequately preserve those two claims.
¶ 11 The court denied the postconviction motion without a Machner hearing.[4] It first concluded that the mistrial was "the only sensible ruling" given defense counsel's "improper remarks during opening statement." The court also concluded that it had rightly allowed the jury to watch the robbery video without court supervision, writing:
[T]he very idea of a judicial nanny supervising the jury's review of the evidence is an affront to the jury. It is essential to a reasoned outcome that they should vigorously debate what the video evidence shows, and they are most able to do that when they have the ability to replay it as they discuss it, for as many times as they feel necessary. That can most effectively be done when they are left alone with the evidence. If a video of the actual commission of the crime exists, how is it that the jury would "overemphasize" that part of the evidence? That is just a word from an old case that has no application to an intelligent jury deciding the issue.
The court thus also rejected Flint's claims of ineffective assistance of counsel.
¶ 12 Flint raises the same three arguments on appeal: that granting the mistrial violated his right to be free of double jeopardy; that allowing the unsupervised jury to view the surveillance video during deliberations runs contrary to settled law; and, alternatively, should this court find that he waived or forfeited those issues, defense counsel was ineffective. We address them in turn.
¶ 13 "The Fifth Amendment to the U.S. Constitution and Article I, Section 8 of the Wisconsin Constitution protect a criminal defendant from being placed in jeopardy twice for the same offense." State v. Seefeldt , 2003 WI 47, ¶ 15, 261 Wis. 2d 383, 661 N.W.2d 822. Jeopardy attaches when the jury is sworn. WIS. STAT. § 972.07(2).
¶ 14 If the State moves to retry a defendant after a mistrial, the defendant must move for dismissal on double jeopardy grounds to avoid forfeiture. See State v. Mink , 146 Wis. 2d 1, 10, 429 N.W.2d 99 (Ct. App. 1988).[5] Flint moved to dismiss the second trial on the sole basis that the State failed to preserve or disclose exculpatory evidence. He therefore has forfeited this claim.
¶ 15 As to the unsupervised viewing of the videotape, defense counsel initially objected because she read the case law as requiring court supervision. Once the court explained its view that Franklin and Anderson did not control, however, she objected only out of concern that jurors might access other files via a computer. Once reassured they would not, counsel confirmed she had no other issue with the court's ruling. We deem this argument forfeited because the record shows that Flint's counsel essentially abandoned her earlier objection.
¶ 16 We thus conclude Flint forfeited both of his claims. "[T]he normal procedure in criminal cases is to address [a forfeited claim] within the rubric of the ineffective assistance of counsel." State v. Erickson , 227 Wis. 2d 758, 766, 596 N.W.2d 749 (1999) (citations omitted).
¶ 17 To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the defense was prejudiced as a result of the deficient conduct. Strickland v. Washington , 466 U.S. 668, 687 (1984). To prove deficient performance, the defendant must identify counsel's specific acts or omissions that fell "outside the wide range of professionally competent assistance." Id. at 690. To show prejudice, the defendant must demonstrate that the result of the proceeding was unreliable. Id. at 687. If the defendant fails on either prong, the ineffective assistance of counsel claim fails. Id. at 697. "Courts may apply the deficient performance and prejudice tests in either order, and may forgo the deficient performance analysis altogether if the defendant has not shown prejudice." State v. Williams , 2015 WI 75, ¶ 74, 364 Wis. 2d 126, 867 N.W.2d 736.
¶ 18 "The decision to declare a mistrial is within the 'sound discretion' of the trial court." State v. Duckett , 120 Wis. 2d 646, 650, 358 N.W.2d 300 (Ct. App. 1984) (citation omitted). A court may declare a mistrial "whenever, in [its] opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated."Id. (citations omitted). "An improper opening statement unquestionably tends to frustrate the public interest in having a just judgment reached by an impartial tribunal." Arizona v. Washington , 434 U.S. 497, 512 (1978).
¶ 19 When considering a mistrial on the State's motion, the court "should consider other alternatives before depriving a defendant of the valued right to be tried by the original tribunal." Duckett , 120 Wis. 2d at 650. For example, it may instruct the jury to disregard the improper comment. While Judge Milisauskas did not expressly state that he considered giving a curative instruction, that does not mean he did not consider it. Further, that avenue "will not necessarily remove the risk of bias that may be created by improper argument." Washington , 434 U.S. at 512-13. Judge Schroeder similarly noted in his postconviction motion ruling that, while courts presume a jury will disregard statements when instructed to do so, "for good reason, that is not an ironclad rule."
¶ 20 Flint asserts an unsupported claim of prejudice from counsel's failure to move for dismissal based on double jeopardy. The case was in the opening arguments stage, not far into a trial that was going well for him. See Duckett , 120 Wis. 2d at 653. We must "accord the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected by the improper comment." Washington , 434 U.S. at 511. We are satisfied that the trial court properly exercised its discretion. "[A] claim predicated on a failure to challenge a correct trial court ruling cannot establish" prejudice. State v. Ziebart , 2003 WI App 258, ¶ 14, 268 Wis. 2d 468, 673 N.W.2d 369. A motion to dismiss likely would have failed. An attorney is not ineffective for failing to make meritless arguments. See State v. Toliver , 187 Wis. 2d 346, 359-60, 523 N.W.2d 113 (Ct. App. 1994).
¶ 21 Flint next argues that, in the event this court sees no error in the mistrial ruling, he should be allowed a new jury trial because, by allowing the jury to view the robbery video on its own, the trial court disregarded the plain requirements of established law.
¶ 22 In Franklin , the defendant's tape-recorded confession was played for the jury and, over a defense objection, the trial court sent the tape and a tape recorder into the jury room during jury deliberations. Franklin , 74 Wis. 2d at 720, 724. On appeal, the supreme court said it could not approve of a practice "which entails the risk of breakage or accidental erasure of the tape while it is beyond the trial court's supervision" and further "presents the danger of overemphasis of the confession relative to testimony given from the witness stand." Id. at 724. Anderson , which dealt with a videotaped interview of a sexual-assault victim with a social worker reiterated the Franklin court's rationale. Anderson , 291 Wis. 2d 673, ¶¶ 30-32.
¶ 23 The court here concluded that the Franklin concerns were not implicated. It noted that the danger of giving too much emphasis to a taped confession or a victim interview over other testimony simply does not attach when a jury views-repeatedly, if necessary-a video of a crime as it actually was being committed, especially where the issue was the identity of the fourth robber. If required to view the video in open court, jurors could not point things out, make comments, or react in any way that would shed light on the deliberation process.
¶ 24 A second concern in Franklin was that the jury would inadvertently destroy evidence. Franklin , 74 Wis. 2d at 724. As the State noted in its opposition to Flint's postconviction motion, Franklin was decided in 1976 when recording technology was far less evolved. Now, not only is accidental damage to a digital copy far less likely, digital copies are so easily made that, if replacement were necessary, it "would have virtually no impact" on the trial or the record.
¶ 25 Although Franklin and Anderson , which squarely rests on Franklin , remain good law, the careful distinctions the trial court drew between those cases and Flint's case show that they do not necessarily apply in every case. Given the differences between the purposes of the recordings in the three cases, and with advances in technology over the past four decades, we cannot say that the unsupervised viewing of the surveillance tape was error.
¶ 26 Ultimately, as to the prejudice prong of ineffective assistance of counsel, Flint states only that "he would have prevailed" had the issue been adequately preserved for appeal because the issue "ha[s] merit." This conclusory assertion does not in any way establish that prejudice flowed from the jury actually watching the video unsupervised.
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

The Honorable Anthony G. Milisauskas presided over the first trial and granted the mistrial motion. The Honorable Bruce E. Schroeder presided over the second trial and the postconviction motion hearing.

Not long after, Williams, Holliman, and Cooper were in a car crash. Williams was killed and Holliman later died from his injuries.

All references to the Wisconsin Statutes are to the 2015-16 version unless noted.

See State v. Machner , 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

We use "forfeiture," rather than "waiver," consistent with the terminology adopted in State v. Ndina , 2009 WI 21, ¶ 29, 315 Wis. 2d 653, 761 N.W.2d 612.