# COURT OF APPEALS
# DECISION
# DATED AND FILED

## March 9, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2018AP942-CR**

Cir. Ct. No. 2014CF5088

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

      PLAINTIFF-RESPONDENT,

  V.

ROBERT DARIS SPENCER,

      DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: STEPHANIE ROTHSTEIN, Judge. *Order affirmed in part; reversed in part and cause remanded with directions.*

Before Brash, P.J., Dugan and White, JJ.

¶1      DUGAN, J. Robert Daris Spencer appeals from the order of the trial court to deny his postconviction motion without a hearing.[1]  He argues that the trial court's decision to dismiss a juror for cause violated his right to due process and equal protection and was an erroneous exercise of the trial court's discretion.  He further argues that he is entitled to a new trial because his constitutional right to counsel was violated when the trial court questioned a juror regarding her illness without his trial counsel present.  Last, Spencer argues that his trial counsel was ineffective for failing to object to certain testimony that he argues is inadmissible hearsay.

¶2      Upon review, we conclude that Spencer forfeited his ability to challenge the trial court's decision to dismiss the juror based on any alleged violation of his right to due process or equal protection or any alleged erroneous exercise of the trial court's discretion.  We further conclude that any error by the trial court that violated Spencer's right to counsel was harmless.  We, accordingly, affirm the trial court's order dismissing Spencer's postconviction motion without a hearing as to these grounds of Spencer's motion.

¶3      By contrast, we reverse the trial court's order denying Spencer's motion, without a hearing, on the grounds that he received ineffective assistance of counsel.  We conclude that Spencer alleged sufficient material facts in his postconviction motion to warrant a ***Machner***[2] hearing, and we remand for the trial court to conduct a hearing on Spencer's claim of ineffective assistance of counsel.

---

[1] While the appellant appeals from both a judgment and an order, we address only the order for the reasons set forth in the opinion.

[2] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

2

## BACKGROUND

¶4      On September 28, 2014, police responded to a report of shots fired in the area of 3402 North 23rd Street in Milwaukee, Wisconsin. When police arrived at the scene, they discovered T.M. laying on the sidewalk in a pool of blood with a gun shot wound to the head. An investigation into the shooting indicated that, prior to any shots being fired, Spencer and T.M. approached their friend, R.S., in front of his house located at 3398 North 23rd Street. Spencer and T.M. attempted to rob R.S. to settle a debt and then drag R.S. to a van located across the street. When R.S. broke free and ran back towards his house, shots followed. The investigation indicated that there were two shooters: one shooter near the van who shot at R.S. as he ran away, and one shooter who fired shots at Spencer and T.M. from a kitchen window at 3398 North 23rd Street. Spencer was charged on November 17, 2014, with one count of felony murder and one count of possession of a firearm by a felon, based on the State's theory that Spencer attempted to rob R.S., shot at R.S. as R.S. ran away, and, as a result of the robbery, caused T.M.'s death.

¶5      The case proceeded to a jury trial, which began on June 22, 2015. On June 26th, the final day of the trial, the proceedings began at 8:59 a.m. with a discussion about jury instructions. A bailiff advised the trial court that one of the jurors was ill. After a recess of approximately forty-five minutes, the proceedings resumed at about 10:05 a.m., whereupon, after allowing the parties to make any motions they deemed appropriate and state their positions on the record in response to the trial court's decision to dismiss the juror the trial court dismissed the ill juror for cause. The State agreed that the juror should be dismissed for cause. However, Spencer's trial counsel objected to the dismissal of the juror and moved for a mistrial based on her concern that this presented an issue under

*Swain*[3] given the fact that the juror was the only African-American member of the jury.

¶6 The proceedings continued with closing arguments with the remaining twelve jurors, and the jury began deliberations following closing arguments. The jury ultimately returned a guilty verdict on all counts, and the trial court sentenced Spencer to a global sentence of thirty-eight years of imprisonment, composed of twenty-three years of initial confinement and fifteen years of extended supervision.

¶7 Spencer filed a postconviction motion on January 25, 2018, wherein he argued that he was entitled to a new trial. Spencer contended that he was denied his Sixth Amendment right to counsel at a critical stage of the proceedings when the trial court questioned the juror about her illness without his trial counsel present. In addition, Spencer argued that he was entitled to a new trial because his trial counsel was ineffective when she failed to object to hearsay testimony indicating that Daniel McKinney, R.S.'s roommate, saw R.S. being dragged across the street and fired shots from the kitchen window to protect R.S.

¶8 In response, the State argued that Spencer forfeited his ability to object to any interaction between the trial court and the juror because trial counsel failed to voice any contemporaneous objection and, in fact, implicitly consented to

---

[3] *Swain v. Alabama*, 380 U.S. 202 (1965), *overruled in part by* *Batson v. Kentucky*, 476 U.S. 79 (1986). In *Swain*, the Court held that the systemic exclusion of African-Americans from jury arrays violated African-American defendants' rights to equal protection of the law. *Id.* at 203-04. At trial here, trial counsel argued that Milwaukee County's procedures when impaneling jury arrays systemically excluded African-Americans and, therefore, violated Spencer's right to equal protection of the law. The trial court found that Spencer failed to prove that Milwaukee County's procedures systemically excluded African-Americans from jury service and denied Spencer's motion.

the trial court's questioning of the juror when trial counsel asked the trial court to ask the juror a follow-up question about her condition. The State additionally argued that the interaction did not occur at a critical stage of the proceedings or, in the alternative, that any error in the interaction between the trial court and the juror was harmless. The State also argued that Spencer's counsel was not ineffective for failing to object to hearsay testimony because Spencer's allegations of deficient performance and prejudice were conclusory.

¶9     The trial court denied Spencer's motion without a hearing. The trial court found that Spencer's right to counsel was not violated because the period of time after the close of evidence and before deliberations in which the trial court questioned the juror about her illness was not a critical stage of the proceedings for which Spencer "needed assistance with a legal problem and where counsel's presence was essential." Further, the trial court found that any error in the trial court's questioning the juror about her illness outside the presence of Spencer's counsel was harmless. As to Spencer's argument relative to ineffective assistance of counsel, the trial court found that Spencer suffered no prejudice because, even if trial counsel had objected, "there is simply not a reasonable probability that the defendant would have been acquitted of the crimes with which he was charged because there was absolute overwhelming evidence of his guilt."

¶10     This appeal followed. Spencer has renewed his same arguments on appeal, as well as brought three additional arguments challenging the trial court's decision to dismiss the juror for cause.

**DISCUSSION**

### I.    Spencer forfeited his claims challenging the trial court's decision to dismiss the ill juror

¶11    Spencer argues that the trial court's decision to dismiss the juror for cause violated his rights to due process and equal protection and was an erroneous exercise of the trial court's discretion.  As the basis for his argument, Spencer points to the trial court's explanation of its decision in which the trial court noted that the juror and many of the trial participants were African-American.

¶12    We conclude that Spencer has forfeited these claims and decline to address them because Spencer failed to raise them below, either by objecting at the time of trial or by addressing them in his postconviction motion.  In other words, Spencer raises his claims that the trial court's decision to dismiss the juror for cause violated his right to due process, his right to equal protection, and was an erroneous exercise of the trial court's discretion for the first time in his opening brief in this appeal.

¶13    "The general rule is that issues not presented to the [trial] court will not be considered for the first time on appeal." *State v. Caban*, 210 Wis. 2d 597, 604, 563 N.W.2d 501 (1997).  This rule serves several important functions, including, that "[r]aising issues at the trial court level allows the trial court to correct or avoid the alleged error in the first place, eliminating the need for appeal." *State v. Huebner*, 2000 WI 59, ¶12, 235 Wis. 2d 486, 611 N.W.2d 727. The rule applies to constitutional claims, so long as the defendant knew of the trial court's action.  *See State v. Pinno*, 2014 WI 74, ¶57, 356 Wis. 2d 106, 850 N.W.2d 207.

¶14    In this case, Spencer failed to raise these as arguments below when trial counsel made a *Swain* objection during the trial and then he failed to raise these arguments in his postconviction motion. Specifically, trial counsel objected on the basis of *Swain* and moved for a mistrial saying: "I'm also renewing my challenge under *Swain*. [T]he research shows … that even the presence of one African-American on a jury can make a difference in terms of reducing systemic bias. … So I'm moving for a mistrial." Spencer then failed to revisit the *Swain* objection in his postconviction motion or make any argument on the basis of his rights to due process and equal protection or an argument on the basis of an erroneous exercise of discretion.

¶15    At most, the trial court had in front of it an objection and a motion for mistrial from counsel, during the trial, based on a concern that the jury would not be fair and impartial without an African-American juror. This is wholly different from the arguments that Spencer now makes essentially asserting that the trial court's decision was discriminatory because it considered the juror's race and the race of the trial participants in violation of his rights to due process and equal protection and as an erroneous exercise of discretion. The trial court, therefore, had no chance to address or correct any possible error, whether of a constitutional nature or not, in its decision to dismiss the juror or explain its reference to the race of the juror and the trial participants when it rendered its decision. These arguments have, thus, been forfeited, and we do not address them as they were raised for the first time in this appeal. *See Caban*, 210 Wis. 2d at 608 (considering a Fourth Amendment argument forfeited when the defendant failed to object and raise the argument in the postconviction motion).

7

### II. Any assumed violation of Spencer's right to counsel was harmless error

¶16  Spencer further argues that he was denied his right to counsel at a critical stage of the proceedings when the trial court interviewed the juror in chambers and outside the presence of counsel.  The State argues, that even assuming that Spencer was denied counsel during a critical stage of the proceedings in violation of his right, any error was harmless.  We agree with the State and conclude that any assumed error in the trial court's interview of the juror was harmless.

¶17  The Sixth Amendment of the United States Constitution guarantees a criminal defendant the "right to counsel at all critical stages of the criminal process."  *Marshall v. Rodgers*, 569 U.S. 58, 62 (2013) (citation omitted). "Ordinarily, the absence of counsel at a critical stage of the trial is not subject to harmless error analysis."  *State v. Anderson*, 2006 WI 77, ¶74, 291 Wis. 2d 673, 717 N.W.2d 74, *overruled on other grounds by State v. Alexander*, 2013 WI 70, 349 Wis. 2d 327, 833 N.W.2d 126.  However, "a harmless error analysis may apply to certain violations of the Sixth Amendment right to counsel," such as "when the [trial] court has had ex parte communications with the jury."  *Id.*, ¶76. In such a case, we examine the record to determine whether the communication, "in light of the entire trial," was harmless beyond a reasonable doubt, and we ask whether there is a reasonable possibility that the error contributed to the conviction.[4]  *State v. Burton*, 112 Wis. 2d 560, 571, 334 N.W.2d 263 (1983)

---

[4]  Spencer argues that, should this court apply the harmless error test, that the applicable standard is whether there is overwhelming evidence of guilt.  After reviewing Wisconsin precedent, we reject this as the applicable standard.  In fact, this approach was specifically rejected by our supreme court in *State v. Burton*, 112 Wis. 2d 560, 571, 334 N.W.2d 263 (1983), *overruled on other grounds by State v. Alexander*, 2013 WI 70, 349 Wis. 2d 327, 833 N.W.2d 126.

(citation omitted), *overruled on other grounds by Alexander*, 349 Wis. 2d 327. "[S]ituations will inevitably arise in which the communication is so innocuous that it cannot be said that the error in any way influenced the jury's verdict." *Id.* at 570.

¶18     The trial court made the following record of what transpired during the forty-five minute recess on the final day of trial:

> The [c]ourt went off the record because I was advised that we had a juror who was not feeling well. And when I inquired and with the assistance of one of the bailiffs, we had the juror come out of the jury room, go into my chambers where there's a quiet place for her to rest to see whether she would be feeling better.
>
> She is not feeling well enough to proceed. And when I asked her about 15, 20 minutes ago if she thought she would feel well enough to proceed in any particular length of time, her answer was very tentative and she said unlikely basically and she didn't know how long she would need before she could participate. She is, if you want to know the details, queasy, light headed, just unwell generally.
>
> I did inquire. She said she's been having some health issues as of late and believes that these are her words "the reminisce" of some health issues that have been going on I think last week. I conferred with the attorneys. We met in the back. I advised the attorneys going along what was the cause for the delay and what was being done to assist the juror and we agreed to wait and we've now waited a significant period of time. And I have to be mindful that we have the remaining [twelve] sitting back in the jury room waiting to move forward.
>
> I understand the significance of this for both sides, frankly. This is the only African-American juror on the panel. But I am not prepared to put her health at risk by having her continue and go to deliberations when she is so unwell. After we met, the defense asked a question for purposes of the record which I do not find inappropriate. I did ask I inquired along the lines of the concern that the defense had. I asked the juror if her stress or her not being well enough to proceed had anything to do with her service as a juror or with the behavior of any of the other jurors.

9

> Her response to me was "Oh, no. This has nothing to do with the trial." So I'm satisfied with that response. I've made my record.

¶19 The record is clear that trial counsel was not present during the trial court's discussion with the juror in chambers about the nature of the juror's illness. However, even if we assume that the trial court's communication was in violation of Spencer's right to counsel, we conclude that any such violation was harmless. The record is clear that counsel was still included in the process of deciding what to do in response to the juror falling ill, and any error was, therefore, harmless. The trial court "conferred" with the attorneys "in the back" to discuss the reason for the delay, and "[they] agreed to wait" for a longer period of time. Indeed, the trial court asked trial counsel's question about whether the juror's illness had anything to do with the trial, and the trial court reported back with the juror's answer. After allowing the juror to rest for an additional period of time, the record resumes with the trial court relating what happened over the preceding forty-five minutes, and at that time, the trial court made the decision, with counsel present, to dismiss the juror for cause because the juror was unlikely to be able to continue. Trial counsel objected to the juror's dismissal and moved for a mistrial based on *Swain*, and after the trial court denied the motion, the proceedings continued with the remaining twelve jury members.

¶20 This is not the first time a trial court has communicated with the jury outside the presence of counsel, and while we cannot condone the practice—in fact, we discourage it—it need not result in automatic reversal. For example, when the trial court correctly responded to questions from the jury during deliberations without alerting counsel of the jury's question, we found any error with the communication to be harmless. *See State v. Koller*, 2001 WI App 253, ¶1, 248 Wis. 2d 259, 635 N.W.2d 838; *State v. Bjerkaas*, 163 Wis. 2d 949, 952,

10

472 N.W.2d 615 (Ct. App. 1991). Furthermore, when a judge entered the jury room during deliberations to discuss dinner arrangements for the juror members, our supreme court found any error with the communication to be harmless. *See Burton*, 112 Wis. 2d at 562. In each case, the communications were said to be innocuous and did not contribute to the outcome of the case. We see the communications between the trial court and the juror here as comparable, even assuming, without deciding, the communication was in error.

¶21 Additionally, looking at the communication "in light of the entire trial," *id.* at 572-73, we must necessarily conclude that any assumed error was harmless because Spencer received what he was entitled to, namely a fair and impartial jury, and the communications cannot be said to have influenced the jury's verdict. "A defendant is entitled to fair and impartial jurors, not jurors whom he hopes will be favorable towards his position." *State v. Mendoza*, 227 Wis. 2d 838, 863, 596 N.W.2d 736 (1999). "A defendant's rights go to those who serve, not to those who are excused." *Id.* There is nothing in the record, and Spencer fails to argue, that the remaining twelve jurors, none of whom had any ex parte communications with the trial court, were biased or partial. *See State v. Tulley*, 2001 WI App 236, ¶11, 248 Wis. 2d 505, 635 N.W.2d 807. Spencer had a right to be tried by a fair and impartial jury composed of twelve members, and that is what he received despite the ill juror having been dismissed prior to deliberations.

### III. Spencer pled sufficient facts entitling him to a hearing on his claim for ineffective assistance of counsel

¶22 "A hearing on a postconviction motion is required only when the movant states sufficient material facts that, if true, would entitle the defendant to relief." *State v. Allen*, 2004 WI 106, ¶14, 274 Wis. 2d 568, 682 N.W.2d 433. "If

11

the motion raises such facts, the circuit court must hold an evidentiary hearing." *Id.*, ¶9. "[I]f the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief," a trial court may, in its discretion, deny a postconviction motion without a hearing. *See id.* Whether a motion alleges sufficient facts that, if true, would entitle the defendant to an evidentiary hearing presents a question of law that we review *de novo*. *See State v. Bentley*, 201 Wis. 2d 303, 310, 548 N.W.2d 50 (1996). "[A] defendant should provide facts that allow the reviewing court to meaningfully assess his or her claim." *Id.* at 314. As stated in *Allen*:

> postconviction motions [should] … allege the five "w's" and one "h"; that is, who, what, where, when, why, and how. A motion that alleges, within the four corners of the document itself, the kind of material factual objectivity ... will necessarily include sufficient material facts for reviewing courts to meaningfully assess a defendant's claim.

*Id.*, 274 Wis. 2d 568, ¶23 (footnote omitted).

¶23 "Under the Sixth and Fourteenth Amendments to the United States Constitution, a criminal defendant is guaranteed the right to effective assistance of counsel." *State v. Balliette*, 2011 WI 79, ¶21, 336 Wis. 2d 358, 805 N.W.2d 334. A defendant must show two elements to establish that his or her counsel's assistance was constitutionally ineffective: (1) counsel's performance was deficient; and (2) the deficient performance resulted in prejudice to the defense. *Id.* "To demonstrate deficient performance, the defendant must show that his counsel's representation 'fell below an objective standard of reasonableness' considering all the circumstances." *State v. Carter*, 2010 WI 40, ¶22, 324 Wis. 2d 640, 782 N.W.2d 695 (citation omitted). Prejudice occurs when the attorney's

12

error is of such magnitude that there is a "reasonable probability" that but for the error the outcome would have been different. ***State v. Erickson***, 227 Wis. 2d 758, 769, 596 N.W.2d 749 (1999). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." ***Cullen v. Pinholster***, 563 U.S. 170, 189 (2011) (citations omitted).

¶24    In his postconviction motion, Spencer alleged that R.S.'s testimony that McKinney shot at Spencer and T.M. from the kitchen window to protect R.S. constituted inadmissible hearsay and his trial counsel was ineffective in failing to object to this testimony. Spencer further argued that the State's reliance on this assertion in its opening and closing arguments demonstrate that the State used it for the truth of the matter asserted.

¶25    After identifying what he alleged was inadmissible hearsay and how and why he believes it is hearsay, Spencer then alleged how he was prejudiced because McKinney shooting from the kitchen window to protect R.S. was the "key evidence" in the State's case to prove felony murder. Spencer further alleged how trial counsel's performance was deficient because he contended there is no possible strategy that trial counsel could have had in not objecting to R.S.'s hearsay testimony. Spencer argued the hearsay "was important to the State, and harmful to the defense."

¶26    Spencer provided the who, what, where, why, when, and how of his allegations that he received ineffective assistance of counsel and did more than recite conclusory allegations. Taking his allegations as true, we conclude that Spencer alleged sufficient material facts that would entitle him to relief, and the trial court was required to grant Spencer a ***Machner*** hearing. *See **State v. Sholar***,

13

2018 WI 53, ¶51, 381 Wis. 2d 560, 912 N.W.2d 89 ("[T]he issue … is whether the defendant's motion alleged sufficient facts entitling him to a hearing.").

¶27     We, therefore, remand for the trial court to hold a *Machner* hearing on Spencer's claim that he received ineffective assistance of counsel when his trial counsel failed to object to R.S.'s hearsay testimony. *See Sholar*, 381 Wis. 2d 560, ¶54 ("[W]hen an appellate court remands for a *Machner* hearing, it must leave both the deficient performance and the prejudice prongs to be addressed[.]").

## CONCLUSION

¶28     We conclude that Spencer is not entitled to a new trial because he forfeited his claims that the trial court's decision to dismiss the juror for cause violated his right to due process and equal protection and was an erroneous exercise of discretion. We further conclude that Spencer is not entitled to a new trial because any error in the trial court's communications with the juror was harmless. Therefore, the trial court's decision in these respects is affirmed.

¶29     However, we reverse the trial court's decision to deny Spencer's motion that he received ineffective assistance of counsel because Spencer alleged sufficient material facts in his postconviction motion. We emphasize that we are not deciding that trial counsel was deficient or that Spencer was prejudiced, only that Spencer's postconviction motion was sufficient to require that the trial court conduct an evidentiary hearing on ineffective assistance of trial counsel. We remand to the trial court for a *Machner* hearing and further proceedings consistent with this decision.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions.

14

Not recommended for publication in the official reports.

No. 2018AP942-CR(CD)

¶30     WHITE, J. (*concurring in part; dissenting in part*).  I disagree with the Majority's conclusion that Spencer forfeited his claim to challenge the trial court's decision to discharge Juror No. 2 and that the trial court's *ex parte* communication with Juror No. 2 constituted harmless error.[1]  *See* Majority, ¶¶11-21.  I believe that Spencer's due process rights were violated when trial counsel was not present when the trial court questioned the juror about her ability to continue serving on the jury and then dismissed the juror, contrary to our supreme court's holdings in *State v. Alexander*, 2013 WI 70, ¶24, 349 Wis. 2d 327, 833 N.W.2d 126.  Therefore, I would remand this matter for a new trial and I respectfully dissent.  I join in the Majority opinion in its conclusion that Spencer was denied effective assistance of counsel for failing to object to certain testimony that he argues is inadmissible hearsay.  *See* Majority, ¶¶22-27.

¶31     Although the Majority concedes that Spencer's constitutional rights may have been violated, it concludes that the violation was harmless error because there were no allegations that the final jury panel was not impartial.  I believe this considers the wrong question.  A defendant's constitutional right to presence during criminal proceedings exists independently of a defendant's constitutional

---

[1] The Majority considers trial counsel's motion for mistrial and *Swain* objection insufficient for this court to review his arguments on appeal.  Majority ¶15; *see Swain v. Alabama*, 380 U.S. 202 (1965), *overruled by Batson v. Kentucky*, 476 U.S. 79 (1986).  I disagree.  As I consider the trial court's *ex parte* communication with and discharge of Juror No. 2 to implicate violations of Spencer's due process rights and constitutional rights to assistance of counsel, I consider his objections sufficient to avoid forfeiture.  *See State v. Albright*, 96 Wis. 2d 122, 129-30, 291 N.W.2d 487 (1980), *holding modified by State v. Weed*, 2003 WI 85, 263 Wis. 2d 434, 666 N.W.2d 485.

right to an impartial jury.  The Majority conflates the two rights, determining that as long as Spencer's deliberating jury panel was not alleged to be unfair, then the due process violations that occurred in selecting the final jury are not prejudicial. I cannot ignore the trial court's failure to comply with due process and Wisconsin precedent.

¶32    "The constitutional right to presence is rooted to a large extent in the Confrontation Clause of the Sixth Amendment ... but we have recognized that this right is protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him." *United States v. Gagnon*, 470 U.S. 522, 526 (1985) (citations omitted).  Both the United States and Wisconsin Constitutions contain a right to due process.  U.S. CONST. amend. XIV, WIS. CONST. art. I, § 8.  "Due process guarantees a defendant 'the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure.'" *Alexander*, 349 Wis. 2d 327, ¶20 (quoting *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987)).

¶33    "A criminal defendant's right to an impartial jury, on the other hand, flows from the Sixth Amendment to the U.S. Constitution and Article I, Section 7 of the Wisconsin Constitution." *Alexander*, 349 Wis. 2d 327, ¶21.[2]  There are no

---

[2] I consider the Majority's reliance on *State v. Tulley* to be misplaced.  *See id.*, 2001 WI App 236, ¶3, 248 Wis. 2d 505, 635 N.W.2d 807.  Tulley challenged his conviction because "the circuit court examined three members of the venire outside the presence of the defendant, his counsel and the prosecuting attorney, without objection from anyone." *Id.*, ¶8.  In contrast, Spencer's trial was at a completely different stage:  Juror No. 2 was selected for the jury panel, the trial phase had ended, and deliberations were set to begin.  The analysis of harmless error caused by *ex parte* communication during *voir dire* of jurors not selected to the panel does not implicate a defendant's due process rights.

allegations here that Juror No. 2 was biased or that Spencer's preemptory challenges were ignored or improper.[3] The issue here is Spencer's right to due process and his right to have counsel present during a critical stage in the legal proceeding, namely when a juror selected at *voir dire* was dismissed for cause before deliberations began.[4]

¶34 As our supreme court shaped the law on the constitutional right of defendant's presence, it concluded over and over that the presence of counsel safeguarded defendant's due process rights. "All that the Constitution requires at such a conference is the presence of defense counsel." *Alexander*, 349 Wis. 2d

---

[3] The importance of an impartial jury cannot be overstated; however, the concerns it raises are not issues in Spencer's trial. For example, "[i]f a juror is not indifferent in the case, the juror shall be excused." WIS. STAT. § 805.08(1) (2017-18); *see* **State v. Brunette**, 220 Wis. 2d 431, 439, 583 N.W.2d 174 (Ct. App. 1998). There is no allegation that Juror No. 2 was biased. "Any claim that a jury is not impartial must focus not on the jurors who were removed by peremptory challenges but on the jury that actually sat in the case." **State v. Traylor**, 170 Wis. 2d 393, 400, 489 N.W.2d 626 (Ct. App. 1992). *See* **State v. Lindell**, 2001 WI 108, ¶81, 245 Wis. 2d 689, 629 N.W.2d 223; **State v. Lepsch**, 2017 WI 27, ¶58, 374 Wis. 2d 98, 892 N.W.2d 682. There is no allegation that the twelve jurors who deliberated on the case were not impartial. There is no allegation that Spencer was denied access to preemptory challenges in the composition of the jury panel.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[4] I fully acknowledge that Juror No. 2 may have become the alternate through random chance. Deliberations had not yet begun and by law, "the court shall determine by lot which jurors shall not participate in deliberations and discharge them. WIS. STAT. § 972.10(7). That Juror No. 2 was not guaranteed to serve on the jury does not negate my due process concerns.

3

327, ¶29.[5] The overarching message is that a defendant's right of presence may be limited in certain situations, but defendant's right to counsel and accordingly, counsel's presence cannot and should not be limited.

¶35 Our supreme court clarified that a defendant's constitutional rights are safeguarded by the presence of counsel even when the defendant is denied access. In *Alexander*, two jurors notified the trial court separately that the juror recognized someone connected to the case, the first a person in the gallery and the second a witness at trial. *Alexander*, 349 Wis. 2d 327, ¶¶10-11. The trial court met with trial counsel, the State, and the jurors in three separate meetings; the defendant was not present. *Id.*, ¶¶7-8, 10, 12. The trial court struck each of the jurors from the panel for cause before deliberations began. *Id.*, ¶14. Alexander argued that his due process rights were violated because he was excluded from these meetings. But our supreme court held that "[a]ll that due process … required was that the defendant's attorney be present." *Id.*, ¶24. Our supreme court cited to federal case law to support that the defendant's absence could be safeguarded by the presence of counsel. *See United States v. Provenzano*, 620 F.2d 985, 998 (3d Cir. 1980) ("Examination of the record reveals that counsel vigorously safeguarded appellants' interests, to the extent of insisting on

---

[5] *See May v. State*, 97 Wis. 2d 175, 183-184, 293 N.W.2d 478, (1980) ("[C]ounsel should have been given the opportunity to confer with the court about the appropriate response to be given to the jury's question. It was error for the trial court to answer the question without notifying counsel."); *State v. Burton*, 112 Wis. 2d 560, 564-65, 334 N.W.2d 263 (1983), *overruled on other grounds by State v. Alexander*, 2013 WI 70, 349 Wis. 2d 327, 833 N.W.2d 126) ("The [S]tate and defendant agree that this judge's comments to the jury in the jury room outside the presence of defendant and defense counsel constitute constitutional error."); *State v. Anderson*, 2006 WI 77, ¶¶68-70, 291 Wis. 2d 673, 717 N.W.2d 74, *overruled on other grounds by Alexander*, 349 Wis. 2d 327 ("The assistance of counsel when a court communicates with the jury during deliberations may be necessary to a meaningful defense…. The circuit court thus erred by failing to have defense counsel present when it communicated with the jury.").

procedures [that] counsel thought would yield the best chance for acquittal."); *United States v. McCoy*, 8 F.3d 495, 497 (7th Cir. 1993) ("McCoy's interests were sufficiently protected by his counsel's presence at the conferences. McCoy therefore had no due process right to attend."); *Ellis v. Oklahoma*, 430 F.2d 1352, 1355 (10th Cir. 1970) ("By deciding that a criminal defendant does not have an absolute constitutional right to be a participant in such in camera discussions where his lawyer is present, the question narrows itself to whether the communication itself, as related in the in camera proceeding, was actually prejudicial.")

¶36 My analysis focuses on four concerns: (1) the record is insufficient for meaningful review; (2) the trial court's *ex parte* communication was consequential; (3) Spencer was denied the right to counsel at a critical stage; and (4) the removal of Juror No. 2 was not harmless error.

## I. The record

¶37 Here, critical information is missing from the record because the trial court was alone when it assessed Juror No. 2. The record itself notes that a forty-five minute recess was taken. The trial court stated "The record should reflect … [i]t's been over a half an hour at least, maybe 45 minutes, since we went off the record earlier." As the Majority recounts, the trial court explained that a juror had become ill and the court sent that juror to lie down in chambers. Majority, ¶18. The court asked the juror about her potential return "about 15, 20 minutes ago." The trial court also stated: "We met in the back. I advised the attorneys going along what was the cause for the delay and what was being done to assist the juror and we agreed to wait." The record is unclear if the trial court had the juror alone for twenty-five to thirty minutes before the trial court "conferred with the

5

attorneys" or exactly how long the trial court met with the juror without the presence of counsel.

¶38    In reviewing the record, I was struck by the trial court's description that it conferred with counsel regarding the discharge of Juror No. 2. The record does not make clear what that meant in a practical way or whether it complied with the duties set forth for trial courts when faced with the need to discharge jurors in *State v. Lehman,* 108 Wis. 2d 291, 300, 321 N.W.2d 212 (1982). In *Lehman*, when a juror became ill during several hours into deliberations, an alternate juror that had been released was recalled to service without notifying the defendant, counsel or the State. *Id.* at 293. When the defense objected to substituting the alternate or having a jury of eleven people, the circuit court ordered that the alternate be impaneled. *Id.* On appeal, our supreme court held that a trial court had discretion to discharge a juror before or during deliberations; however, "it is the circuit court's duty, prior to the exercise of its discretion to excuse the juror, to make careful inquiry into the substance of the request and to exert reasonable efforts to avoid discharging the juror." *Id.* at 300. Relevant here, the circuit court's inquiry "generally should be made out of the presence of the jurors and *in the presence of all counsel* and the defendant." *Id.* (emphasis added). This inquiry depends on the facts and circumstances of the case. The trial court must be extremely cautious to "avoid a mistrial by either needlessly discharging the juror or by prejudicing in some manner the juror potentially subject to discharge or the remaining jurors." *Id.*

¶39    The *Lehman* court noted that the record was "totally devoid" of how the circuit court became aware of the ill juror, who discharged the juror, what inquiries were made of the ill juror, and whether discharge was the only option. *Id.* at 301. Relevant to our discussion here, our supreme court highlighted that

6

"neither the defendant nor the [S]tate was given an opportunity to be present when the ill juror was discharged." *Id.* It continued, "[w]e can not determine from the record … whether or not the circuit court exercised its discretion to discharge the juror or on what basis the court reached its decision." *Id.* The *Lehman* court then stated that under these facts and circumstances, it could only conclude "that the circuit court abused its discretion in discharging the regular juror." *Id.* Similarly, Spencer's counsel was denied the opportunity to be present during the meeting with Juror No. 2, and I consider the record to be inadequate to support the trial court's exercise of discretion.

¶40    Here, Spencer was denied the safeguards of counsel when the trial court acted alone in its meeting with the juror. The Majority ably recites the trial court's description of what happened that day. Majority, ¶18. However, I must reiterate the point that the trial court is the only record for what happened. There is no testimony from the juror, no court reporter record, no colloquy with counsel. Two additional parts of the record stand out as well. The first issue is that the trial court appeared unaware that removing Juror No. 2 would be "for cause." The conversation went as follows:

> [THE STATE]: I would simply indicate, Your Honor, that I do agree that based on health issues that she should be struck for cause. I think it would be very—
>
> THE COURT: She's excused is what we're going to say.
>
> [THE STATE]: The only reason I was going to say "for cause" is because I do know that the statutes do say that alternates can only be picked at random. So we can't designate her as an alternate per statute but we can excuse her for a good reason.
>
> THE COURT: For cause.

7

> [THE STATE]: Yeah, for cause. And the only reason I'm saying that is because that is allowed. So I agree with the Court's resolution or determination.
>
> THE COURT: All right.

¶41 This record raises concerns whether the process under *Lehman* to discharge Juror No. 2 at this stage of trial was followed. If a careful inquiry in accordance with *Lehman* leads the trial court to require removing a juror for cause, the "trial court has the discretion to remove a juror for cause during a trial proceeding." *State v. Gonzalez*, 2008 WI App 142, ¶20, 314 Wis. 2d 129, 758 N.W.2d 153. If this occurs prior to deliberations, then the trial court may determine that the excused juror was the alternate. *Id.*, ¶20. Here, the State appears to remind the trial court about this procedure when it told the trial court that Juror No. 2 would need to be excused for cause, but the record is insufficient to show that the trial court fulfilled its duty of careful inquiry and reasonable efforts to avoid discharging the juror.

¶42 The second issue is the court's reaction to trial counsel's attempt to make a record on its concerns.

> [TRIAL COUNSEL]: At the outset of this trial when the panel was impaneled and after the composition of the potential jurors was revealed, I expressed to the [c]ourt concern about the underrepresentation of minorities at that point in the room. The following morning I brought a *Swain* challenge based on the pool of people that is from the Department of Transportation's photo ID and state ID records and that it underrepresented African-Americans. The [c]ourt denied the challenge ruling that I had not met my burden of proof.
>
> We're now in a situation where we have no African-American jurors. And in a trial where the defendant is African-American, I inquired specifically of— I believe she was Juror No. 2.
>
> THE COURT: Yes.

8

[TRIAL COUNSEL]: —whether or not she would be able to handle the pressure if she were the only African-American juror. I believe what these events demonstrate is not that the juror was not—

THE COURT: That the juror was what?

[TRIAL COUNSEL]: The juror was in any way dishonest with any of us or herself but that there are—that our bodies are under lots of pressure from lots of things and that this is not unpredictable. I'm moving for a mistrial. I understand the [c]ourt is going to deny it but I have to move for a mistrial to protect the record.

THE COURT: Yes.

[TRIAL COUNSEL]: I'm also renewing my challenge under *Swain*. And finally, the research shows, and I have it in my car, not here in front of me, that even the presence of one African-American on a jury can make a difference in terms of reducing systemic bias. And I'd be happy to get the article to complete the record but I don't have it in front of me. It's in the car with the rest of the stuff. And I would like permission to supplement that just to put it in the record. So I'm moving for a mistrial.

THE COURT: Okay. Your motion is noted and it will be denied for the reasons that I've stated. I will add and thank you but I'm not gonna allow you to supplement the record at this point with additional research materials. I'm not saying that they're not valid. I haven't read them. But at this point they're not part of the record and they don't—they're not part of the [c]ourt's decision making process in this.

¶43 Trial counsel's argument gets to the heart of the importance of representation when the trial court communicates with jurors. Trial counsel raises concerns about whether the juror has been stressed by the experience of being on the jury or the trial itself. Trial counsel's concerns about the racial makeup of the jury pool and a *Swain* challenge are questions that reach the fairness of a jury.[6]

---

[6] I do not follow this argument any further other than to note that defense has raised the issue, made an objection, and has not forfeited Spencer's claims. I do not inquire or assess Spencer's potential success at showing an equal protection violation.

9

*See Swain v. Alabama*, 380 U.S. 202 (1965), *overruled by Batson v. Kentucky*, 476 U.S. 79 (1986); *Powers v. Ohio*, 499 U.S. 400, 411 (1991) ("Jury selection is the primary means by which a court may enforce a defendant's right to be tried by a jury free from ethnic, racial, or political prejudice." (citations omitted)). When the trial court announced that Juror No. 2 had been released, the trial court mentioned the concern about losing the only African-American member of the jury panel. However, the trial court's process by which Juror No. 2 was released foreclosed trial counsel's opportunity to see the juror's demeanor or to ask whether accommodations might allow her to remain on the jury panel. "Unless a defendant and his or her lawyer are present when potential jurors are questioned, the subtleties of responses are lost-even if a transcript is made available to the defendant and defense counsel." *State v. Harris*, 229 Wis. 2d 832, 844, 601 N.W.2d 682 (Ct. App. 1999).[7]

¶44 It is critical that the trial court left no record by anyone who could testify to what happened that morning with Juror No. 2. The Majority concludes that Spencer forfeited his right to challenge the trial court's decision to dismiss the ill juror because he failed to object on the basis of due process violation and equal protection directly to the trial court or in his postconviction motion. Majority, ¶¶11-15. The Majority concludes that trial counsel's *Swain* objection did not satisfy those objectives. I disagree and I conclude that Spencer has not forfeited his claims. An overly narrow reading of Spencer's objections denies him legal recourse. A trial court judge cannot serve dual roles under our adversarial system:

---

[7] *State v. Harris*, 229 Wis. 2d 832, 844, 601 N.W.2d 682 (Ct. App. 1999), addresses due process concerns in *voir dire*, but its characterization of the importance of interactions between juror and counsel or juror and judge are applicable here.

the judge cannot represent the defendant's or State's interests; the judge must not invade the province of counsel or the jury. If the trial court makes the only record, then there is no one who can be questioned about the proceedings. This directly leads to why the presence of counsel is of critical importance. A defendant denied counsel faces violations of constitutional rights without objection or recourse.

## II. Ex parte communication

¶45 Wisconsin courts have concluded that *ex parte* communication between the jury and judge constitutes harmless error when the communication was an incidental encounter, a "short interlude in a complex trial," **Gagnon**, 470 U.S. at 527, or it "concern[ed] situations where, in the context of the case, the deprivations were essentially *de minimis*." **Harris**, 229 Wis. 2d at 841. The Wisconsin appellate courts have frequently admonished and warned trial courts that *ex parte* communication with jurors is a potentially dangerous and inadvisable path. "There is always a risk of the conference exceeding a nonconstitutional scope or causing misunderstanding." **Ramer v. State**, 40 Wis. 2d 79, 85-86, 161 N.W.2d 209 (1968). This supreme court warning remains prescient:

> While we do not question the good faith or the motives of a judge, like the one in this case, who communicates with the jury about supper and other matters relating to the jurors' physical comfort and well-being, we do not condone the practice of a judge entering the jury room or communicating with a jury outside of the presence of the defendant and of counsel for the defendant both and the state, even when the judge scrupulously takes a court reporter with him or her to the jury room to record the comments. The judge is a figure of authority and respect during the trial; his or her intrusions into the sanctity of jury deliberations may affect those deliberations. Even a transcript of the judge's communication cannot reveal a judge's facial expressions or tone of voice. Defense counsel and defendant must be present to have the opportunity to observe the judge's demeanor first-hand, to

> object to statements or request curative statements in the
> event that the communication may be improper in any way.

*State v. Burton*, 112 Wis. 2d 560, 569, 334 N.W.2d 263 (1983), *overruled on other grounds by Alexander*, 349 Wis. 2d 327. If the entire recess was forty-five minutes, it is unclear how long the juror was alone with the court and when counsel was notified. What is clear is that the trial court did not make a record of its conversation with the juror. The trial court did not invite counsel to see the juror or question her directly, instead it relayed questions and answers. This *ex parte* communication was not harmless because it was consequential: Juror No. 2 was removed from the panel after that communication.

¶46 In *State v. Avery*, 2011 WI App 124, 337 Wis. 2d 351, 804 N.W.2d 216, the court of appeals addressed a similar factual circumstance and illustrates how to avoid the due process violations found here. In *Avery*, the trial court communicated *ex parte* with a juror who had asked to leave the jury after the first day of deliberations. *Id.*, ¶51. During the five-week trial, the trial court sequestered twelve jurors and an alternate. *Id.* After the first day of deliberations, Juror M asked the sheriff to be excused because a family emergency and marital problems. *Id.* The sheriff notified the trial court, who reached out by telephone to defendant's counsel and the State that evening. *Id.* "Counsel agreed that the court should speak personally with Juror M. and, if the information provided by [the sheriff] was verified, the juror should be excused." *Id.* The trial court spoke with the juror and heard genuine concern related to his marriage and excused the juror. *Id.*

¶47 The *Avery* trial court met again with counsel before the second day of deliberations began. "Both defense counsel and the trial court agreed that the procedure would be governed by" *Lehman*. *Avery*, 337 Wis. 2d 351, ¶52. After

that meeting, defense counsel met with the defendant for twenty minutes. *Id.* Upon confirmation on the record in court, the defendant agreed to replace Juror M with the alternate juror; deliberations with the newly constituted panel began anew. *Id.*

¶48 In contrast, here the trial court did not notify counsel when the bailiff informed the court that a juror was feeling unwell. Although the *Avery* and *Spencer* trial courts each met with a juror alone to hear the juror's concerns, in *Avery*, the trial court communicated with counsel before speaking to the juror and all parties had agreed to release the juror if his issues were verified. Here, the trial court did not notify counsel that the juror was unwell until that juror had been in chambers for some period of time. At some point, the trial court informed trial counsel and "conferred" on how to proceed. In contrast, the *Avery* court spoke with counsel in the evening as soon as it heard about the juror and before the trial court spoke with the juror. Here, the trial court relayed a question from trial counsel, however, it is unclear if the trial court had reached an agreement from counsel to release the juror before the trial court discharged the juror.

¶49 Harmless error analysis is appropriate when counsel is not present for minimal, inconsequential interactions.[8] Here, the consequence of this *ex parte*

---

[8] I believe there is a strong distinction between the *ex parte* communication that occurred here and the *ex parte* communication deemed harmless error in the cases relied upon by the Majority. Majority, ¶20. In *Burton*, 112 Wis. 2d at 563, *overruled by Alexander*, 349 Wis. 2d 327, the judge entered the jury room to determine logistics for deliberations and to make arrangements for dinner. In *State v. Koller*, 2001 WI App 253, ¶61, 248 Wis. 2d 259, 635 N.W.2d 838, *holding modified by State v. Schaefer*, 2003 WI App 164, 266 Wis. 2d 719, 668 N.W.2d 760, the judge, without consulting counsel or the defendant, told the jury that two pieces of evidence it requested to view were not available during deliberations. In *State v. Bjerkaas*, 163 Wis. 2d 949, 957, 472 N.W.2d 615 (Ct. App. 1991), the judge correctly answered the jury's question on a point of law without consulting counsel. None of those interactions had consequence to the composition of the jury panel.

communication was that the only African-American member of the jury panel was excused and Spencer was denied an opportunity for counsel to ensure that finalizing the jury panel was conducted with all due process.

### III. Denied counsel at a critical stage

¶50    The trial court's meeting with Juror No. 2 was a critical stage in the legal proceedings—the trial court does not get to pick and choose who is discharged from service. The trial court has a duty to transparency in justice: we all follow the same rules of law. The trial court may not obscure that process without violating a defendant's constitutional rights. A critical stage has not been precisely defined by the United State Supreme Court, although it has been described as a stage with "significant consequences" or a time when the accused benefits from counsel's legal assistance. *See Schmidt v. Foster*, 911 F.3d 469, 479-480 (7th Cir. 2018) (citations omitted). "The Supreme Court has consistently limited the presumption of prejudice to cases where counsel is physically absent at a critical stage." *Morgan v. Hardy*, 662 F.3d 790, 804 (7th Cir. 2011) (citations omitted).

> As one federal court has colorfully observed, the purpose of defense counsel's presence in the context of a trial court's communication with the jury is to allow counsel to "prime the pump of persuasion" and, thus, potentially convince the court to address the jury communication in a manner that would support the defendant's interests.

*Anderson*, 291 Wis. 2d 673, ¶69.

¶51    The State argues that removing Juror No. 2 was not a critical stage because Spencer cannot "point to a concrete example of prejudice counsel could have helped avoid during that limited discussion in chambers." The State shortchanges Spencer's due process rights with a conclusion that there was no

14

prejudice because what could trial counsel have done to change the outcome of the conference with the juror. This ignores federal and state jurisprudence that safeguard due process through the presence of counsel. The meeting with Juror No. 2 was not innocuous communication or a *de minimis* interaction; it was not a foregone conclusion that Juror No. 2 would be removed from the jury. The trial court denied counsel face to face access to the juror and by doing so violated Spencer's constitutional due process rights.

¶52     Having counsel present does not guarantee any specific or positive outcome for the defendant, but counsel's representation of defendant's interests fulfills the requirements of due process. In *Henderson v. Lane*, a juror had a heart attack more than two hours into deliberations. *Id.*, 613 F.2d 175, 179 (7th Cir. 1980). The trial court called counsel to discuss using an alternate juror; trial counsel did not agree with the use of the alternate, but counsel was present and advocated for the defendant. *Id.* "The [alternate] juror was reinstated in the presence of the petitioner's attorney only after reaffirming his ability to make a fair decision in the case." *Id.* "Unlike many of the proceedings subject to constitutional scrutiny because of the defendant's absence, the proceedings at issue here were transcribed, giving this court a precise record from which to determine prejudice." *Id.* The record allowed the appellate court to fairly review the case. "The most obvious barrier to prejudice in this case was the presence of the petitioner's attorney…. Because of the attorney's presence, the petitioner's interests were properly represented." *Id.* When the trial court makes a record and includes counsel, the reviewing court can determine prejudice to the defendant and violation of due process rights.

### IV.   Harmless error

¶53    The Majority correctly explains that harmless error analysis is available when the defendant is denied his right to counsel.  Majority, ¶17.  My disagreement is not the interpretation of the available law, but the application.  I do not claim that *ex parte* communication between judge and jury is reversible error for violating the Sixth Amendment right to counsel or due process in all cases.  The majority's harmless error analysis is conclusory because it is devoid of "a fact-specific due-process inquiry" that is required to determine if "the communication between the judge and jury [denied] the defendant a fair and just hearing." *Alexander*, 349 Wis. 2d 327, ¶28.

¶54    "The State has the burden of persuasion that the error was harmless … that is, that counsel was not necessary to protect the accused's substantive rights." *Anderson*, 291 Wis. 2d 673, ¶76.  Here, I conclude that the State failed in its burden of persuasion.  The State contends that Spencer has not shown what prejudice he suffered by this due process violation; however, it is the State's burden to show the lack of prejudice.  Further, this argument fails because this conference between the judge and Juror No. 2 was not inconsequential; the trial court did not satisfy its duties under *Lehman* to make a careful inquiry before discharging a juror; and the trial court left an insufficient record of its process.

¶55    The State's conclusion that Spencer experienced no prejudice suffers from the same issues as the Majority opinion:  the lack of record.  When an "error occurs at trial and its scope is readily identifiable ... the reviewing court can undertake with some confidence its relatively narrow task of assessing the likelihood that the error materially affected the deliberations of the jury." *Holloway v. Arkansas*, 435 U.S. 475, 490 (1978) (citations omitted).  Here, the

16

scope and impact of the trial court's error is difficult to assess because of the lack of record. The "absence of a complete record of the communication" between the judge and jury weighed heavily as a factor in favor of a finding of prejudice because the reviewing court was "deprived of an opportunity to make an assessment of the prejudicial effect of the communication." *Anderson*, 291 Wis. 2d 673, ¶118 (citations omitted). There is a similar problem here. The record is insufficient for the reviewing court to meaningfully assess the prejudice to Spencer's trial.

¶56     I was struck by the trial court's words in response to trial counsel's inquiry, when the trial court stated that Juror No. 2, was "if you want to know the details, queasy, light headed, just unwell generally." The trial court made the inquiry. Addressing the parties and the record with the words "if you want to know the details"—is the trial court's fundamental misunderstanding of its duties. In our legal system, trial counsel and the State are zealous advocates of their respective clients. Here, the trial court invaded counsel's responsibility. Trial counsel had a duty to her client: a duty to inquire vigorously about the fitness of the jury panel members. The juror's words and demeanor should not be filtered by the judge. Spencer's rights should not be filtered by the judge. Spencer's rights cannot be considered rights if he is only granted them as filtered by the trial court. Trial counsel needs to have an opportunity to represent her client's legal interests and the trial court must not overstep.

¶57     Trial counsel made a record about the defense's concern that there was a racism component to the juror's illness. Our trial courts have a duty to preserve each defendant's rights. This duty springs from the basis of justice, flows through our state and federal constitutions, and is repeatedly pronounced in our supreme court decisions.

¶58    This issue comes down to the law and the record. The law is simple. The trial court should make a careful inquiry before discharging a juror for cause during the trial or deliberations. *Lehman,* 108 Wis. 2d at 300. The trial court's meetings with jurors should occur in the presence of counsel to safeguard a defendant's constitutional rights, particularly when it comes to removing jurors. *See Alexander*, 349 Wis. 2d 327, ¶29. The record should be clear and unambiguous to allow a reviewing court to determine whether there is any reasonable doubt that the *ex parte* communication impacted the fairness of the trial. *Avery*, 337 Wis. 2d 351, ¶52, *see also Moore v. Knight*, 368 F.3d 936, 944 (7th Cir. 2004). Here, the record was insufficient.

¶59    I concur in the Majority opinion that Spencer was denied effective assistance of counsel for failing to object to certain testimony that he argues is inadmissible hearsay. I am also persuaded that Spencer's rights were also violated when the trial court failed to include his counsel at a critical stage in the case—a meeting with Juror No. 2 that led to the juror's discharge—and this was not harmless error. I do not agree that he forfeited his right to appeal these issues. Therefore, I respectfully dissent and would reverse and remand this matter for a new trial.